IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| KAJEET, INC., | § § | |
| Plaintiff, | § § | Case No. 6:20-cv-203 |
| v. | § § | |
| LIGHTSPEED SOLUTIONS, LLC, | § § | **JURY TRIAL DEMANDED** |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff KAJEET, INC. files this Complaint for Patent Infringement against Defendant LIGHTSPEED SOLUTIONS, LLC, alleging as follows:

### I. THE PARTIES

1. KAJEET, INC. ("Plaintiff" or "Kajeet") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7901 Jones Branch Drive, Suite 350, McLean, Virginia 22102.

2. Defendant LIGHTSPEED SOLUTIONS, LLC ("Defendant" or "Lightspeed") is a limited liability company organized under the laws of California with a principal place of business at 2500 Bee Cave Road, Building One, Suite 350, Austin, Texas 78746. Lightspeed may be served with process by serving its registered agent, National Registered Agents, Inc. at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

### II. JURISDICTION AND VENUE

3. This is an action for infringement of United States patents under 35 U.S.C. §§ 271, *et seq.* Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

1

4. Defendant maintains its corporate headquarters within this District at 2500 Bee Cave Road, Building One, Suite 350, Austin, Texas 78746 and develops and/or sells its products, including the Accused Products described herein, in this District.

5. Defendant has sufficient minimum contacts with the Western District of Texas such that this venue is fair and reasonable. Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activity. Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the Western District of Texas.

6. Further, upon information and belief, Defendant makes or sells products that are and have been used, offered for sale, sold, and/or purchased in the Western District of Texas. Defendant directly and/or through its distribution network, places infringing products or systems within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold and/or used in the Western District of Texas.

7. Likewise, Plaintiff transacts business within the Western District of Texas and in competition with Defendant, at least via its equipping Austin Independent School District buses with its SmartBus product to provide WiFi internet access to students.[1]

8. For these reasons, personal jurisdiction exists, and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), respectively.

---

[1] See press release at URL:
https://www.prweb.com/releases/kajeets_smartbus_wi_fi_grant_enables_austin_independent_school_district_to_connect_its_534_school_bus_fleet_with_mobile_education_broadband/prweb16992282.htm

### III. BACKGROUND AND FACTS

9. Kajeet is the owner of all rights and title in and to U.S. Patent No. 8,667,559 ("the '559 Patent" or "the Asserted Patent"). The inventions disclosed and claimed in the Asserted Patent were developed by the founders, entrepreneurs, and engineers of Kajeet and were assigned to Kajeet upon issuance.

10. Kajeet is a U.S.-based company, founded in 2003, which develops software and hardware solutions promoting safe use of mobile devices by children both at home and in schools and libraries. Kajeet was founded by three fathers who sought to develop systems and methods ensuring safe use of mobile phones, tablets, computers, and other mobile devices by their children.

11. Kajeet has become an industry leader in this area of mobile device management, developing innovations that led to the issuance of thirty-four U.S. patents to date, including the Asserted Patent, and having implemented its solutions in hundreds of school districts comprising thousands of schools across the nation. These innovations were directly developed by the founders and engineers at Kajeet as part of Kajeet's continuous work to protect children from inappropriate and distracting online content, and to enable schools and families to keep children focused and safe from the many potential dangers associated with unconstrained access to online content.

12. The disclosure and claims of the Asserted Patent describe improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or unconstrained access to some or all of the available functionality supported by the

communication device. See, *e.g.*, the '559 Patent at 1:47-62.[2]  A typical scenario addressed by the Asserted Patent is that of a smartphone, tablet, or laptop used by a child. See, *e.g.*, the '559 Patent at 4:11-18; 4:38-44; and, 5:20-29. This is a relatively new problem that has arisen in the past decade as mobile communication devices have become more popular and more widely used throughout society, including in schools and at home by children. See, *e.g.*, the '559 Patent at 1:51-58; 2:10-21; 4:42-58; 6:34-409; 12:48-62; and, 14:13-23.

13.     Mobile smartphones appeared in the mid-1990s as Personal Digital Assistants ("PDAs").  These devices expanded the set of features accommodated by handheld mobile communication devices and their appearance coincided with the rise in popularity and use of the World Wide Web.  In 2007, Apple released the first iPhone and in 2008 released the App Store.  This signaled the beginning of mainstream smartphone ownership and usage and, in particular, ownership and usage of feature-rich smartphone devices by teens and children. Also, during this timeframe, other Internet-capable, mobile computing devices greatly expanded in popularity, including tablet devices, including iPads and Kindles, as well as laptop devices, including the Google Chromebook. Increasingly, these devices are put in the hands of teens and children both by their parents and by schools, giving them ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality.  Further, this new access is cheap, anonymous, and readily-available at any time, day or night from virtually anywhere.  Parents, as well as school administrators and others, have struggled with addressing this newly created problem ever since.

---

[2] All citations to the '559 Patent, which is attached hereto as Exhibit A, are illustrative rather than exhaustive and therefore do not comprise complete listings of all portions of the specification addressed to each topic for which citations are provided.

14. The Asserted Patent is addressed to specific systems and methods for addressing this new problem faced by parents, teachers, business owners, and the like. The Asserted Patent recognizes that old-world methodologies, such as simply taking the devices away, do not truly address the problem at hand and undermine the safety benefit of device ownership – continuous access for communication, such as always providing a direct means for a parent to call its child or vice versa. For device ownership by teens and others to provide this benefit, the device is necessarily in the possession of the teen at times when he or she is *away from* parents, teachers, and the like. Old-world monitoring of device use to preventing inappropriate use is therefore also ineffective and does not address the true context of this new problem in society created by the development and proliferation of feature-rich mobile communication devices.

15. As explained in the specification of the Asserted Patent, prior art systems and methods for controlling mobile communication device usage in such settings were ineffective. For example, prepaid phone plans placed limits on the charges that could be run up on a mobile communication device but did so through toggling access to the communication network off once the account reached a zero balance. Beforehand, access to the communication network may be unconstrained while after, no access is provided whatsoever. This control scheme was ineffective for preventing misuse of the mobile communication device by a child while still providing access to desirable features. See, *e.g.*, the '559 Patent at 2:36-44.

16. Likewise, unlimited use smartphone service plans could prevent the accumulation of excessive usage costs but were ineffective to prevent overuse or use of a

mobile communication device at inappropriate times or to access inappropriate content. See, *e.g.*, the '559 Patent at 3:7-16.

17. Other solutions involving control through enforcement of decisions based upon policies defining permitted use that were set and stored only in accessible portions of the memory of the device itself, such as in the volatile memory of the device. These solutions were likewise ineffective as the policies upon which decisions effecting control were vulnerable to manipulation or deletion by virtue of their only being stored in accessible portions of memory of the computing device. Further, such solutions required separate and independent configuration of each computing device to be controlled, resulting in increased administrative costs.

18. The Asserted Patent states that the systems and methods disclosed therein "are effective tools for any phone user that requires some level of supervision, such as a handicapped individual, a person suffering from dementia, a corporate employee, or even an adult that has shown poor judgment in the past and needs help managing their affairs." '559 Patent at 5:34-41. The Asserted Patent also states that:

> The ability to regulate *when a phone can be and cannot be used can also be of value to parents and school districts* with respect to resolving one of the greatest conflicts that exist between parents/students and school administrators - mobile phone usage by kids. Parents want children to have a mobile phone with them so the child can call the parent if need be, i.e., if someone forgets to pick the child up after school. School districts do not want the children to have the phones at all *because the students tend to misuse the phones, i.e., to call friends during school, to cheat, to engage in illegal activity, etc*. While the school districts believe that children should be relegated to only using the school phones if the children need to contact a parent, the parents want the children to have the phones with them in case they get locked out of the school, get lost on a field trip, etc. '559 Patent at 12:48-62 (emphasis added).

The Asserted Patent therefore recognizes that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance with a scheme that prevents access to them by the user of the device, who may have poor judgment or be motivated to otherwise misuse the communication device.

19. The specification the Asserted Patent discloses, among other innovations, systems and methods for providing access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. See, *e.g.*, the '559 Patent at 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The Asserted Patent discloses control embodiments applying decisions based upon policies defining acceptable and unacceptable uses of a mobile communication device. The policies may be based on a variety of contexts which are set by administrators (e.g., parents or teachers). In accordance with certain embodiments of the inventions disclosed, the policies are set and stored at the server level to provide simultaneous control over use of one or more mobile communication devices. See, *e.g.*, the '559 Patent at embodiment of Fig. 2; 3:54-59; 4:11-18; 5:45-50; 13:8-28; and, Claims. The intrinsic record states this at Office Action Response dated October 17, 2013 filed during prosecution of the '559 Patent at p. 10 (distinguishing a particular embodiment claimed therein on the basis that the prior art "does not describe a ***distributed architecture where policy decisions are performed at the server level*** and those policies are enforced on the phone

7

itself.")(emphasis added). A true and correct copy of this Office Action Response is attached hereto as Exhibit C and incorporated for all purposes.

20. Application of use decisions based upon a policy stored remote from the controlled computing device represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society. Embodiments of the inventions disclosed and claimed in the Asserted Patent implementing this unconventional scheme provide for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

21. Lightspeed is a developer of software-based solutions primarily directed to the education market and accommodating feature management of computing devices configured for operation on communication networks, including laptops, tablets, smartphones, and the like. Each of the devices managed by Lightspeed's software comprises a computing device usable to access online content and applications over a communication network managed by a service provider, such as an internet service provider (ISP).

22. The Accused Products of Lightspeed include all versions of the Relay Platform and all versions of the Mobile Manager products and services. The Accused Products accommodate management of mobile communication devices accessing content over communication networks via application of remotely stored master policies set by administrators (e.g., teachers or parents).

23. The Accused Products comprise a system of hardware (Lightspeed servers) and software (local Smart Agent applications/extensions or the Mobile Manager

software) implementable on computing devices to accommodate management of certain features and functionality of computing devices. The Accused Products are compatible for use with communications devices utilizing iOS, OSX, Android, Windows, or Chrome OS operating systems. Such devices include iPhones, iPads, Android phones, Android tablets, laptops, Chromebooks, and the like.

24. The Accused Products effect policy-based control over these devices via, among other things, executing local agent software on the device. Execution of local agent software effects control of the device via routing usage requests to and from the device through the Lightspeed servers for policy application. Additionally, or alternatively, the local agent software effects control via regular installation and updates of locally stored copies of master policies (or derivatives thereof) via communication with the Lightspeed servers for on-device application.

25. Regardless of the mode of policy application employed, all master policies defining permissible or impermissible uses of a device are set and stored via Lightspeed's Launch online dashboard and are stored on Lightspeed's servers. Administrators log into Launch to enroll devices and to select and configure policies defining acceptable uses which may be applied to devices individually or to groups of devices. For example, policies may be set and applied for all devices to be used by students attending a particular school, within a particular grade level, and/or in a particular class. Different policies may be applied depending on the time-of-day in accordance with schedules. Further, different policies may be applied based on the location of the managed device, as determined based on the IP address used to access a communication network.

26. Upon information and belief, application of time or location-based policies involves determining the time of day where the device is located or the IP address used by the device to access a communication network by the local agent software. This information is compared to local copies of the time or location-based policies (or derivatives thereof) to determine the policy to be applied, such as determining whether on or off campus policies or whether weekday or weekend policies are applicable in deciding whether a usage request is allowed. Execution of the local agent software additionally configures the device to regularly update any locally stored policy copies to ensure the policy applied is consistent with the current master policy set by the administrator(s) and stored on Lightspeed's server(s).

27. Application of policies yields decisions defining what device features and network content are usable or accessible by a managed device. Lightspeed accommodates selectively permitting or blocking access to device features, such as Internet content, mobile applications, and the like based on application of allow/disallow policies, which may be further configured in accordance with association of the controlled device to one or more defined groups, with schedule-based policies, with location based policies, among others.

28. The Accused Products are operable to create and apply policies permitting or preventing a user of a device to: sign in or out of online user accounts; add or remove email accounts; access online mobile application marketplaces; make in-app purchases for downloaded mobile applications; synchronize content stored on a managed device with other devices of the device user; remove mobile applications stored on the device; run certain mobile applications; and/or access a communications network.

29. For each managed device, local agent software of the Accused Products is enabled on the device in the form of Smart Agent software, Mobile Manager software, or an extension to the operating system software. Execution of the local agent software causes the managed device to generate or direct requests for uses of the device for comparison to applicable usage policies, or derivatives thereof, in connection with applying and enforcing master policies defining permissible uses of the managed device.

30. Lightspeed accommodates implementation of time-based policies defining permissible and impermissible device usage, including schedules applied by device and/or by defined groups of devices.

31. In operation, users of a managed device attempt to execute a function on the managed device requiring communication over a network. For example, a user of a managed device may attempt to make a purchase through a mobile application on the managed device. Upon information and belief, the local agent software detects this attempted use and formats a usage request for comparison to applicable usage policies. A copy of master policies are set on and stored within and/or accessible to the local agent software. The request is compared to all current and applicable policies, which may have been previously updated, to determine, at least, whether the attempted function is allowed or prohibited. Policy decisions are made in real time in response to requests by the Accused Products. Decisions are enforced via permitting or blocking execution of the requested function or communication.

32. Upon information and belief, the Accused Products effect feature management over devices connected to a communication network without storing the master policies on the devices, themselves. Rather, policy copies or derivatives thereof

are stored on managed devices and regularly updated through execution of the local agent software running on the devices.

33.     Lightspeed provides instructions to its customers and users of the Accused Products demonstrating how to install, set up, and use each to manage computing devices connected to a communications network.  Such instructions are provided in the form of, at least, user manuals, Lightspeed's online "Community Site," "Intercom Help Center," and at URL: help.relay.school.  Each of these online resources provide weblinks and articles with use instructions and tutorials directed to end users of the Accused Products demonstrating use thereof in manners that infringe the Asserted Patent(s).  Use of the Accused Products in accordance with these instructions constitutes direct infringement of the Asserted Patent by end users of the Accused Products.

34.     Lightspeed has had actual knowledge of the Asserted Patent since at least the filing of this complaint, therefore, and has had actual knowledge of Kajeet's claims of infringement relating to the Accused Products since that time.  Upon information and belief, Lightspeed continues to make, use, and sell the Accused Products, including ongoing subscriptions, to its customers.

## COUNT I

## PATENT INFRINGEMENT

## U.S. Patent No. 8,667,559 B1

35.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

36.     On March 4, 2014, United States Patent No. 8,667,559 B1 ("the '559 Patent") was duly and legally issued for "Feature Management of a Communication

Device." As of the filing of this Complaint, the '559 Patent remains in force. A true and correct copy of the '559 Patent is attached hereto as Exhibit A and made a part hereof.

37. Kajeet is the owner of all right and title in the '559 Patent, including all rights to enforce and prosecute action for infringement of the '559 Patent and to collect damages for all relevant times against infringers of the '559 Patent. Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '559 Patent by Lightspeed.

38. The '559 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet or other communication network, for example. The systems and methods claimed accommodate enforcement of decisions granting or denying requests to communicate with remote computing devices over a communication network. The decisions are based on the application of one or more relevant use policies which may be administrator-configurable and may be stored remotely from the controlled computing device. Decisions to grant or deny communication requests from the controlled device may be made and effectuated in real-time.

39. Independent claim 27 of the '559 Patent and each dependent claim depending therefrom are directed to "methods for controlling a computing device configured to execute a function using a communication network managed by a service provider." '559 Patent at Claim 27. These claimed methods require, among other steps, that a decision is received in real time from a server, with the decision

"being based on a policy stored at the server…," and that "the communication being enabled or disabled without storing the policy on the computing device." *Id.*

40.     These limitations mandate that the decision applied to effect control over the computing device is based on a policy stored at a server remote from the computing device. The decision is made upon detection of an attempt by the computing device to perform a function on the communication network. These limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device including that the server storing the policies upon which decisions are based being meaningfully apart from the computing device. This arrangement resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them.

41.     These limitations additionally cover communications initiated by a third-party device and directed to a managed device. Effecting control over these incoming communications to a communication device was likewise not well-understood, routine, or conventional to one of ordinary skill in the art.

42.     Claim 27 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require the application of decisions based upon remotely stored polices. Remote storage of the policies upon which decisions are based makes them less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage. Communication device management in accordance with these claimed methods improves the security, effectiveness, and robustness of control accommodated. As such, the claimed methods are directed to patent eligible subject matter.

43. Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above. These claims require storing usage policies upon which decisions are based at a server remote from the computing device, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods. Prior art control was not premised on application of decisions based upon policies stored at the server level. Instead, the prior art applied decisions based on policies set up on the computing device itself and stored only on the computing device. Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely. Further, prior art systems required that each device be configured separately and individually with its own set of policies. The arrangement claimed in claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions to effect control that are based upon policies stored at the server level, remote form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.[3]

44. Additionally, claims 1 and 13 of the '559 Patent, and correspondingly the dependent claims thereof, are directed to similarly configured systems and methods for effecting remote management of communications devices. These claims implement a

---

[3] These statements are further supported by the declarations of Dr. Charles D. Knutson, which were attached by Kajeet as Exhibits E and I to its Second Amended Complaint (Dkt. Nos. 144, 144-7, and 144-11). filed in the action styled *Kajeet, Inc. v. Qustodio, LLC*, case no. 8:18-cv-01519-JAK-PLA, in the United States District Court for the Central District of California, Western Division, and which are hereby incorporated by reference.

distributed architecture approach with master policies applied to effect control of a device being stored remotely from the managed devices.

45. Lightspeed has had actual knowledge of the existence of the '559 Patent since at least the filing of this complaint. As such, Lightspeed's infringement of the '559 Patent has been willful since at least that time.

46. Lightspeed, without authority, consent, right, or license, and in direct infringement of the '559 Patent, makes, has made, uses, and sells the Accused Products which infringe at least claims 1, 13, and 27 of the '559 Patent, among others. In addition, Lightspeed's quality testing and demonstrations of operation of the Accused Products to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least claims 1, 13, and 27 of the '559 Patent.

47. Lightspeed actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b). A customer's use of the Accused Products to manage computing devices in the manners described above infringes at least claims 1, 13, and 27 of the '559 Patent. Lightspeed knows that the Accused Products are especially designed for and marketed toward infringing use by Lightspeed's customers, to implement feature management of computing devices. Lightspeed has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import one or more of the Accused Products. Lightspeed provides step-by-step instructions for installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claims 1, 13, and 27 of the '559 Patent. These instructions are

provided by Lightspeed as user manuals and online content made available by Lightspeed through its website. Such conduct by Lightspeed was intended to and actually did result in direct infringement by Lightspeed's direct and indirect customers, including the making, using, selling, offering for sale and/or importation of the Accused Products in the United States.

48. Lightspeed contributes to the infringement of at least claims 1, 13, and 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c). The Accused Products are especially designed for controlling use of computing devices in the manner described above. Upon information and belief, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network. Setup and use of the Accused Products by Lightspeed's customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claims 1, 13, and 27 of the '559 Patent.

49. Kajeet expressly reserves the right to assert additional claims of the '559 Patent against Lightspeed.

50. Kajeet has been damaged as a result of Lightspeed's infringing conduct. Lightspeed is, thus, liable to Kajeet in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

51. Based on Lightspeed's actual knowledge of the '559 Patent and of Kajeet's allegations of patent infringement presented herein since at the filing of this

Complaint, if not earlier, as well as Lightspeed's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## VI.  JURY DEMAND

52. Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of the Asserted Patent have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patent have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

c. Judgement that Defendant's infringement is willful from the time Defendant was made aware of the infringing nature of its products and methods and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

    d.       That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

    d.       That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

    e.       That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be permanently enjoined from infringement of one or more claims of the Asserted Patent or, in the alternative, if the Court finds that an injunction is not warranted, Plaintiff requests an award of post judgment royalty to compensate for future infringement;

    g.       That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Respectfully submitted,

s/ Jonathan T. Suder  
Jonathan T. Suder  
Michael T. Cooke  
Corby R. Vowell  
Richard A. Wojcio  
FRIEDMAN, SUDER & COOKE  
604 East 4th Street, Suite 200  
Fort Worth, TX 76102  
817-334-0400  
Fax: 817-334-0401  
jts@fsclaw.com  
mtc@fsclaw.com  
vowell@fsclaw.com  
wojcio@fsclaw.com  

*Attorneys for KAJEET, INC.*